# IN THE SUPREME COURT OF THE STATE OF NEVADA

BOBBY DALE RICHARDS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 70530

FILED

DEC 04 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

Appellant Bobby Richards was convicted of murdering his wife in the courtyard of their marital residence. A jury sentenced him to life without the possibility of parole, and the district court subsequently sentenced him to a consecutive term of 8 to 20 years for the deadly weapon enhancement. Because of error occurring during trial, we reverse Richards' judgment of conviction.

Richards claims the district court failed to give a limiting instruction before the introduction of prior bad act evidence. While it is the prosecutor's duty to request a limiting instruction be given to the jury regarding the use of prior bad act evidence, we have held that, in the event the prosecutor neglects this duty, the district court has a *sua sponte* duty to raise the issue. *Tavares v. State*, 117 Nev. 725, 731, 30 P.3d 1128, 1132 (2001). The limiting instruction is to be given both at the time the bad act evidence is admitted and in the final instructions to the jury. *Id.* at 733, 30 P.3d at 1133. Where a limiting instruction is not given at the time the bad

*18-906855*

act evidence is admitted but is given at the close of trial, this court considers whether the district court's failure to timely give the instruction had a "substantial or injurious effect on the jury's verdict." *Mclellan v. State*, 124 Nev. 263, 271, 182 P.3d 106, 112 (2008). Put another way, "unless we are convinced that the accused suffered no prejudice as determined by the [above-quoted] test, the conviction must be reversed." *Tavares*, 117 Nev. at 732, 30 P.3d at 1132. "On account of the potentially highly prejudicial nature of uncharged bad act evidence, however, it is likely that cases involving the absence of a limiting instruction on the use of uncharged bad act evidence will not constitute harmless error." *Id.* at 732-33, 30 P.3d at 1132-33 (considering a case where no instruction was given during the entirety of the trial).

At Richards' trial, the State introduced testimony from several witnesses about prior incidents of domestic violence between Richards and his wife. One witness testified as to three separate prior bad acts. This same witness, along with three others, testified as to a fourth prior bad act. The fourth prior bad act involved the wife arriving home in the early morning approximately a week and a half before the murder, and Richards awaiting her arrival in the courtyard with a bat and wearing gloves. The witnesses testified that the wife was sexually assaulted by Richards that morning.

This evidence was highly prejudicial. The wife was murdered in the early morning hours and in the courtyard. The State's theory was that she was beaten with a cylindrical object, like a bat. No instruction as to the limited use of the prior bad acts was given at the time the witnesses

testified.[1] While the district court ruled the prior bad acts were probative of intent, ill will or motive, the relationship between Richards and his wife, identity, and plan, the jury heard four witness testify about Richards sexually assaulting his wife with no guidance as to how it should consider the evidence or how the evidence could not be considered as proof of Richards' propensity to commit the charged crime. Then, in the rebuttal closing argument, the State referenced these prior bad acts, going so far as to claim that if the jury had evidence of the fourth bad act alone, it would convict Richards of the murder. Considering the highly prejudicial nature of this evidence, particularly the fourth bad act, and the emphasis placed on the evidence, both by the number of witnesses and by the prosecutor's argument, we are not convinced that the testimony did not have a substantial influence on the jury's verdict. On the basis of this error alone, we reverse Richards' judgment of conviction and remand for a new trial.

Moreover, we conclude that the prosecutor committed misconduct during closing argument when it asked the jury to arrive at a different conclusion than the State's expert about DNA evidence. During trial, the State presented expert testimony related to the results of multiple evidentiary tests. When asked about DNA evidence collected from a patio chair found in the courtyard where the murder occurred, the State's expert testified that "this is a partial profile, but it's so partial that it's too limited for me to be able to make any conclusions or comparisons to an individual." In explaining her demonstrative report, the expert clarified that the report

---

[1]A limiting instruction was given in the district court's final charge to the jury.

contained "NR" notations for "No Results," which meant she did not get any DNA profile at a particular location. Further, the expert clarified that information on the report that was in red indicated "data that's below that threshold where our laboratory [ ] would make comparisons."[2] While the report contained some information in black, indicating a DNA profile was recovered at some locations, the expert concluded that "it wasn't enough for me to be able to make a comparison to a known individual."

In closing argument, the prosecutor presented a chart of the DNA data for the patio chair and put it next to a chart of Richards' DNA on a PowerPoint slide. The prosecutor circled numbers that were similar between the two, including numbers that were in red, before arguing "[h]ow do we know that it was the defendant [sitting in the chair]? Well, look at the DNA profile that [the expert] developed with regards to that swab. *It might have not have [sic] met her recording requirements, but all those numbers circled in yellow, that's the defendant's DNA.*"

This argument was in error. The State presented expert testimony that the DNA evidence was too partial or limited to make any conclusions or comparisons. Despite their own expert's testimony, the prosecutor asked the jury to do exactly what their expert said she could not do. *See Burnside v. State*, 131 Nev. 371, 382, 352 P.3d 627, 636 (2015) ("A qualified expert may testify to matters within their special knowledge, skill, experience, training or education when scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." (internal quotation marks omitted)). The State's argument was inconsistent with, and contrary to, the evidence

---

[2]The expert explained that "below this threshold, sometimes we get DNA that isn't actually from that sample."

presented by the expert, and "[a] prosecutor may not argue facts or inferences not supported by the evidence." *Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005) (quotation marks omitted). Given our conclusion that reversal is warranted based on the failure to give a timely limiting instruction, we need not decide whether this error, alone or cumulatively, warrants reversal.[3]

Based on the foregoing, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc:     Hon. Richard Scotti, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk

---

[3]Additionally, we do not reach Richards' remaining claims on appeal.